COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Moon, Judges Elder and Bray
Argued at Salem, Virginia


DANIEL CONSTRUCTION COMPANY AND
 CONTINENTAL CASUALTY COMPANY
                                              OPINION BY
v.        Record No. 1332-96-3        JUDGE LARRY G. ELDER
                                           JANUARY 28, 1997
WESLEY ALLEN TOLLEY


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Kristine H. Smith (Edmunds & Williams, P.C.,
              on brief), for appellants.

              Barbara J. Balogh (Poindexter & Schorsch, on
              brief), for appellee.


     Daniel Construction Company (appellant) appeals from a

decision of the Workers' Compensation Commission (commission)

awarding permanent total disability benefits to Wesley A. Tolley

(claimant). Appellant contends (1) that the commission erred

when it ruled that a claimant need only prove that he or she

suffers from a psychiatric condition in order to qualify for

permanent total disability benefits under former Code

§ 65.1-56(18); (2) that the evidence was insufficient to prove

that claimant suffered an injury to the brain; and (3) that the

deputy commissioner abused his discretion when he refused to

allow appellant to submit a post-hearing report from its expert.

 For the reasons that follow, we affirm.

FACTS

Claimant, a former concrete plant worker, suffered a trauma-related psychological injury on August 31, 1982 when an unannounced explosion of 100 pounds of dynamite startled him while he was unloading concrete in a mine shaft. As a result of this accident, claimant has suffered from post-traumatic stress disorder, anxiety disorder, panic disorder, and depression. The commission awarded temporary total disability benefits that expired after 500 weeks in March, 1992. On February 8, 1995, claimant filed an application for permanent total disability benefits, alleging that his accident in 1982 had caused an irreversible injury to his brain that rendered him permanently unemployable.

A hearing was held before a deputy commissioner on July 7, 1995. At the hearing, claimant and his wife testified in detail regarding how claimant's injury has adversely impacted the non-vocational quality of his life and severely limited his ability to engage in many usual cognitive processes, such as working, socializing, driving, and engaging in an equal and intimate marital relationship.

The medical evidence introduced at the hearing consisted of (1) claimant's medical records dating from 1972, (2) a report by claimant's treating physician, Dr. Michael Hoffman, dated January 23, 1995, and (3) a report by appellant's expert, Dr. C. Robert

Showalter, dated June 30, 1995. The medical records indicated that after his accident, claimant has consistently been diagnosed as suffering from post-traumatic stress disorder and, with some variation, either anxiety disorder, panic disorder, or depression. In his report, Dr. Hoffman reviewed his observations and treatment of claimant since 1987 and opined that claimant suffered from an incurable psychological disease that has resulted in his permanent unemployability. Dr. Showalter's report stated that after examining claimant once, he concluded that claimant suffered no organic brain deterioration and no irreversible brain injury and that claimant possesses the ability to carry out some level of minimally stressful, gainful employment.

Following the hearing, the deputy commissioner held open the record so that appellant could take a previously scheduled deposition of Dr. Hoffman that had been thwarted when Dr. Hoffman was detained by local floods. The record was also held open to provide Dr. Hoffman the opportunity to respond to Dr. Showalter's report, which was not received by claimant until two days before the hearing. After the hearing, appellant declined to depose Dr. Hoffman and requested either that the record be closed or that Dr. Showalter be permitted to respond to any subsequent report accepted by the deputy commissioner from Dr. Hoffman. Claimant objected and requested the deputy commissioner to allow Dr. Hoffman to file a report in response to Dr. Showalter's and

-3-

to then close the record.  The deputy commissioner ruled that he would close the record after accepting a subsequent report from Dr. Hoffman but not from Dr. Showalter.  Appellant objected to this ruling.

A second report by Dr. Hoffman was filed on September 6. In this report, Dr. Hoffman responded to the conclusions of Dr. Showalter.  He stated that claimant had been consistently diagnosed with post-traumatic stress disorder resulting from his accident and that this psychological disease has manifestations that make it an irreversible brain injury.  Dr. Hoffman described the physical injury to claimant's brain:

> "[Claimant] suffered a traumatic experience that directly resulted in a neurochemical imbalance in his central nervous system. These are changes that occur at a cellular level and are entirely beyond the patient's control.  It is shown throughout the medical literature that post-traumatic responses often manifest themselves in neurochemical changes in the brain.  Recent evidence from the National Institute of Mental Health shows specific structural changes within the neurons that is permanent and irreversible. Damage is done to neurosynaptic receptors and serotinergic neurotransmitters which frequently are extremely difficult to treat . . . . I reluctantly believe this is exactly what happened in this case."

On September 29, the deputy commissioner awarded permanent total disability benefits to claimant.  He stated that claimant's case was governed by former Code § 65.1-56(18) and found that claimant was permanently unemployable and that his injury had taken away some of his "broad range of 'usual' cognitive

-4-

processes."

Appellant appealed the decision of the deputy commissioner and the commission affirmed.  The commission held that under the definition of "injury" set forth in both former Code § 65.2-101 and Burlington Mills Corp. v. Hagood, 177 Va. 204, 13 S.E.2d 291 (1941), an "injury to the brain" includes "a brain injury that manifests itself through a psychiatric condition."  Relying on Dr. Hoffman's reports, the commission found that claimant had proved that he suffered from both a brain injury that manifested itself through a psychiatric condition and an actual physical injury to the brain.

II.

TOTAL PERMANENT BENEFITS UNDER FORMER CODE § 65.1-56(18)

Appellant contends that the commission erred when it concluded that a claimant need only prove that he suffers from a psychiatric condition in order to qualify for permanent total disability benefits under former Code § 65.1-56(18) and when it found that claimant had suffered a physical injury to his brain. We disagree.

Under the former version of the Workers' Compensation Act (Act), Code § 65.1-56(18) provided an exception to the general rule that benefits for compensable injuries had definite time limits.  See Code § 65.1-54.  Under former Code § 65.1-56(18), benefits continued "for the lifetime of the injured employee without limit as to total amount," if the employee suffered inter

-5-

alia from "an injury to the brain resulting in incurable imbecility or insanity."  Code §§ 65.1-54, 65.1-56(18).  In Barnett v. D.L. Bromwell, Inc., 6 Va. App. 30, 36, 366 S.E.2d 271, 274 (1988), we held that a claimant establishes "incurable imbecility" by showing that his or her irreversible brain injury has both rendered claimant permanently unemployable and eliminated his or her ability to engage in a range of usual cognitive processes in non-vocational life.

Appellant does not contend that claimant failed to prove that he suffered from "incurable imbecility" as contemplated by former Code § 65.1-56(18) and as further defined in Barnett. Instead, appellant asserts that claimant failed to satisfy former Code § 65.1-56(18)'s requirement that he suffer an "injury to the brain."  Appellant argues that the phrase "injury to the brain" is ambiguous and should be construed to exclude conditions that are purely psychological in nature.  However, we need not reach the issue of whether a claimant suffering from a purely psychological injury is entitled to total permanent disability benefits under former Code § 65.1-56(18) because the medical evidence in this case proved that claimant suffered an "injury" that resulted in "structural changes" to the brain.

> "Under familiar principles, we view the evidence in the light most favorable to the prevailing party, [claimant] in this instance."  R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  "It lies within the commission's authority to determine the facts and the weight of the evidence, and its findings in that regard, when supported by

-6-

> credible evidence, will not be disturbed on appeal." Rose v. Red's Hitch & Trailer Servs., Inc., 11 Va. App. 55, 60, 396 S.E.2d 392, 395 (1990). "A question raised by conflicting medical opinion is a question of fact." Commonwealth v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986). "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

Thomas v. Nordstrom Pentagon City, 22 Va. App. 626, 631-32, 472 S.E.2d 288, 290 (1996).

We hold that the evidence was sufficient to prove that claimant suffered an injury to his brain. First, the evidence supports the commission's finding that claimant suffered an "injury." Post-traumatic stress disorder is a compensable injury if caused by either a physical injury or an obvious sudden shock or fright arising in the course of employment. See Hercules v. Gunther, 13 Va. App. 357, 362, 412 S.E.2d 185, 188 (1991); Chesterfield County v. Dunn, 9 Va. App. 475, 477, 389 S.E.2d 180, 182 (1990). Claimant's medical records indicate that in the thirteen years following his accident, physicians have consistently diagnosed him as suffering from post-traumatic stress disorder caused by his exposure to the unexpected dynamite blast.

In addition, credible evidence supports the commission's finding that claimant's injury was "to his brain." Dr. Hoffman's first report demonstrates the necessary link between claimant's post-traumatic stress disorder and his brain. In it, Dr. Hoffman

reported that the symptoms of claimant's psychological problems included the impairment of the ability of claimant's brain to function, including the reduced ability of claimant's brain to remember, concentrate, and maintain emotional stability.  He concluded that claimant "has suffered a severe brain injury." Dr. Hoffman's second report provided a more exact explanation of actual physical changes to claimant's brain caused by post-traumatic stress disorder.  Specifically, Dr. Hoffman stated that post-traumatic stress disorder results in irreversible structural changes within the neurons in the brain that include damage to neurosynaptic receptors and serotinergic neurotransmitters.  He opined that such damage had occurred to claimant's brain and that this injury impaired claimant's cognitive abilities.  Although Dr. Showalter opined that claimant's psychological injury did not injure his brain, "[q]uestions raised by conflicting medical opinions must be decided by the commission."  Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989).

### III.

#### REFUSAL TO RECEIVE POST-HEARING EVIDENCE

Appellant contends that the deputy commissioner abused his discretion when he refused to allow Dr. Showalter to submit a report in response to Dr. Hoffman's post-hearing report.  We disagree.  While proceedings before the commission must comply with the requirements of due process, deputy commissioners

-8-

generally have broad discretion to adapt the conduct of hearings to the circumstances of the case. See Kum Ja Kim v. Sportswear, 10 Va. App. 460, 470, 393 S.E.2d 418, 424 (1990).

We hold that the deputy commissioner did not abuse his discretion by permitting Dr. Hoffman to file a report after appellant canceled his deposition. The record indicates that local floods prevented Dr. Hoffman from being deposed prior to the hearing. In addition, Dr. Hoffman was unable to respond to Dr. Showalter's report in time for the hearing because claimant did not receive the report until two days before the hearing was held. The deputy commissioner left the record open in order to accommodate appellant's deposition of Dr. Hoffman and to "doubly act as an opportunity for Dr. Hoffman to comment [on Dr. Showalter's report]." When appellant canceled its deposition of Dr. Hoffman, it also eliminated the previously designated forum for Dr. Hoffman to comment on Dr. Showalter's report. The deputy commissioner was within his discretion to realize the remaining purpose for which the record was held open by permitting Dr. Hoffman to comment on Dr. Showalter's report in the alternative form of a report of his own.

We also hold that the deputy commissioner did not abuse his discretion when he refused to receive a rebuttal report from Dr. Showalter after accepting Dr. Hoffman's post-hearing report. The record indicates that the deputy commissioner did not grant permission to appellant to file a subsequent report by

Dr. Showalter. We find no abuse of discretion in the deputy commissioner's refusal to accept post-hearing evidence that was beyond the scope of evidence for which the record was held open.

Moreover, even if the deputy commissioner had abused his discretion by refusing to admit a post-hearing report from Dr. Showalter into the record, we could not review whether any prejudice occurred to appellant because appellant did not proffer the content of Dr. Showalter's report. When a deputy commissioner refuses to admit evidence for which the record was arguably held open, "the party must proffer or avouch the evidence for the record in order to preserve the ruling for appeal; otherwise, the appellate court has no basis to decide whether [the party was prejudiced by the deputy commissioner's error]." Smith v. Hylton, 14 Va. App. 354, 357-58, 416 S.E.2d 712, 715 (1992) (stating that party must proffer evidence in order to preserve for appeal an adverse ruling on the admissibility of evidence). Although appellant sent a letter to the deputy commissioner on August 29 objecting to the refusal of a subsequent report from Dr. Showalter, the record indicates that appellant never proffered the content of Dr. Showalter's response to Dr. Hoffman's report after it was filed on September 6.

In light of the foregoing reasons, we affirm the decision of the commission.

Affirmed.