COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick,[*] Judges Elder and Annunziata
Argued at Richmond, Virginia


CITY OF RICHMOND POLICE
 DEPARTMENT
                                    OPINION BY
v.    Record No. 0657-97-2   CHIEF JUDGE JOHANNA L. FITZPATRICK
                                  DECEMBER 9, 1997
CLAUDE ASHLEY BASS, JR.


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Scott C. Ford (Charles F. Midkiff; Midkiff &
            Hiner, on brief), for appellant.

            Malcolm Parks (Maloney, Barr & Huennekens, on
            brief), for appellee.


     The City of Richmond Police Department ("employer") appeals

the Workers' Compensation Commission's decision awarding benefits

to Claude A. Bass, Jr. ("claimant"). Employer argues that the

commission erroneously: (1) excluded claimant's testimony

regarding the relationship between work stress and his

hypertension; (2) found that his claim was not time-barred; (3)

found that claimant established the presence of coronary artery

disease and met his burden of proving a compensable occupational

disease; and (4) found that employer's evidence was insufficient

to rebut the statutory presumption of Code § 65.2-402. For the

reasons that follow, we reverse.


_____

      [*]On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

# I.  BACKGROUND

Claimant is a police captain who has been a member of the Richmond Police Department since 1964.  During his tenure with the department, claimant worked in the organized crime unit, the detective division, and the narcotics squad.  His duties were often dangerous, and he received numerous promotions and decorations.

In October 1994, while at home preparing supper, claimant experienced "a strange sensation, and . . . in a gradual manner, almost like a cloud drifting over, [he] lost sight in [his] eye."  The vision loss occurred in claimant's left eye and lasted for approximately thirty minutes.

Claimant went to see Dr. Mullen, his ophthalmologist, on October 24, 1994.  After examining claimant, Dr. Mullen referred him to Dr. Tulou, claimant's primary care physician.  On October 26, 1994, Dr. Tulou referred claimant to Retreat Hospital for testing and to Dr. Davis, a vascular surgeon, for treatment.  The doctors diagnosed an atherosclerotic blockage in claimant's carotid artery which had reduced blood flow in his brain and caused his episode of vision loss.  On November 10, 1994, claimant was admitted to Retreat Hospital for surgery to correct the blockage.  While he was hospitalized, claimant also had surgery on a similar blockage in his iliac artery.  Claimant was incapacitated until December 5, 1994, when he resumed his full duties as a police officer.

On April 15, 1996, claimant filed a claim for benefits for this injury.  On May 6, 1996, claimant's counsel filed an amended application for a hearing, requesting compensation for lost wages and payment of lifetime medical costs.

It is undisputed that claimant has suffered from hypertension, or high blood pressure, since the 1970s.  Claimant stated that he had never missed any time from work due to his hypertension prior to October 1994.  It is also uncontroverted that claimant was a smoker who had been counseled over the years about controlling his cholesterol and his weight.  Claimant testified that, until October 1994, he had never been told that he had heart disease, vascular disease, or atherosclerosis.  He admitted that he had been told that he had high blood pressure; however, he stated that the various doctors with whom he discussed his high blood pressure did not indicate that his condition was related to his work as a police officer.

Dr. Tulou described claimant's condition as "atherosclerosis with cholesterol deposits compromising [blood] flow."  Though "it is certainly not exclusively a heart disease," there is "evidence on the basis of a thallium scan of the heart that the tip thereof is not receiving adequate blood."  Dr. Tulou gave conflicting statements on the relationship between claimant's work and his condition.  In a letter to claimant's attorney, Dr. Tulou had "absolutely no reservation in stating that [claimant's] work as a police officer in large measure contributed to his hypertension,"

3

and claimant's "hypertension is clearly a risk factor for any atherosclerotic process." Therefore, Dr. Tulou felt that claimant's "disability . . . was related to his work-related hypertension."

However, in a later deposition, Dr. Tulou stated that whether claimant's hypertension and atherosclerosis were caused by his work in any way was "a philosophical question. Speaking from a strictly scientific basis, no, not really. . . . I think it remains speculative as to whether the job itself did it." When questioned whether claimant's condition was caused by stress, Dr. Tulou responded: "I just can't make a definitive statement one way or the other how that contributed. . . . In this particular case, I don't feel strongly one way or the other that it did or did not create his condition or contribute to his condition." Finally, when claimant's attorney queried whether, in Dr. Tulou's opinion to a reasonable degree of medical probability, claimant's work played a role in his hypertension, Dr. Tulou answered: "Plausibly a role, yes."

Dr. Davis saw claimant on November 7, 1994, upon referral from Dr. Tulou. He diagnosed claimant with "atherosclerosis which had become symptomatic in his left carotid and right iliac." He explained that "[a]therosclerosis . . . is a disease of the arteries. It can involve the arteries of the heart and create heart attacks; although, [claimant] showed none of these symptoms at the time of his care." Regarding the relationship

4

between claimant's condition, atherosclerosis, and his work, Dr. Davis indicated that "[t]he probable cause of his condition is genetic and environmental, and I cannot rule out work stress as a contributor to his diagnosis." He declined to comment on whether claimant suffered from heart disease or whether claimant's work as a police officer contributed to any such heart disease.

Dr. Hess reviewed claimant's medical history and answered employer's questions. Dr. Hess offered a diagnosis of "accelerated atherosclerotic cardiovascular disease" as a result of "the hypertensive syndrome with a combination of hypertension, cigarette smoking, and hypercholesterolemia." Regarding the source of claimant's disease, Dr. Hess stated that "there is no identifiable organic cause for his hypertension, and this more than likely represents a genetic predisposition in combination with his risk factors." As to the role of work stress in claimant's condition, Dr. Hess indicated that "there is very little objective proof that stress plays a major contributory role." Consequently, "from a medical viewpoint, it is extremely difficult to incriminate the stress of command on a police officer in giving him his present problems."

Lastly, the record contains correspondence from Dr. Melhorn, the doctor who diagnosed claimant's hypertension in the 1970s. On July 15, 1996, Dr. Melhorn answered certain general questions posed by employer. He stated that he recalled treating claimant in the 1970s; that it was his "normal practice to discuss any

conditions which would require medication with a patient when such a condition is discovered"; that he would typically discuss with a patient the probable causes or contributing factors for such a condition in order to help him avoid or reduce future problems; that work-related stress "could be" a causal factor in claimant's hypertension because "stress does play a part in hypertension"; and that it was his normal practice to discuss the stress factor with a patient. Dr. Melhorn responded, "Yes – probably" to the inquiry: "Given that you knew he was a police officer, that he had hypertension and needed medication for it, do you believe that you most probably told the patient that work related stress was a factor in his diagnosis of hypertension in the 1970s?"

However, on July 16, 1996, Dr. Melhorn wrote a letter to claimant's counsel addressing his specific concerns regarding his treatment of claimant and his earlier statements:

> I wish to state that I do not have the chart or records of my treatment of [claimant], and I do not have any independent recollection of having discussed with [claimant] the question of whether the hypertension with which I diagnosed in him [sic] years ago was related to his work.

When questioned about his past treatment with Dr. Melhorn, claimant testified as follows:

> I wouldn't stretch anybody's imagination to think that I could recall a conversation in the '70's, other than he stressed to me the seriousness of taking the [blood pressure] medicine and of going back to Dr. Gill to have him monitor and be sure in fact that it was a problem. As far as work, I can only

6

say that I have no recollection of him saying that it was work related, and if he had, I feel confident I would have followed up on that.

The deputy commissioner awarded claimant compensation for temporary total disability for the period November 10 through December 4, 1995, together with related medical expenses.

The commission affirmed the decision of the deputy commissioner. In doing so, it rejected "employer's argument that the Deputy Commissioner erred in not permitting the claimant to testify to his own opinion, as to whether stress was a factor in causing his hypertension. Inasmuch as this is strictly a medical issue, his testimony as to stress being a cause of high blood pressure would have no probative value."

Next, the commission found that "there was insufficient evidence of a communication or awareness of an occupational disease more than two years before the filing of the Claim for Benefits on April 15, 1996." Thus, the commission rejected employer's statute of limitations defense.

The commission also determined that: "the medical records sufficiently establish the presence of coronary artery disease. . . . There is no medical evidence to the contrary, and this element of the claimant's case is clearly established." Additionally, noting the statutory presumption, the commission found "no evidence that the Deputy Commissioner failed to consider [employer's] rebuttal medical evidence." Rather, the commission stated that "the rebuttal evidence was not persuasive

7

and . . . claimant's evidence was sufficient to bring him within the purview of the presumption."

Finally, the commission found "no evidence that the Deputy Commissioner failed to consider medical evidence from physicians other than Dr. Tulou, regarding the treatment of the claimant's hypertension." Accordingly, the commission considered any factual conflicts in the evidence and concluded that "all the medical evidence was weighed, and a finding was made on this issue based upon the entire record and its conflicts so far as they existed." The commission concluded that employer's evidence was insufficient to overcome the statutory presumption that claimant's work stress was causally related to his disability.

## II. EXCLUDED TESTIMONY

Proffer facilitates appellate review of an exclusion of testimony. "[W]hen testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer." Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977) (citation omitted). "[I]t is incumbent upon the proponent of the evidence to make a proffer of the expected answer." Speller v. Commonwealth, 2 Va. App. 437, 440, 345 S.E.2d 542, 545 (1986). Without a proffer, "we are precluded from a consideration of this issue on appeal." Mostyn v. Commonwealth, 14 Va. App. 920, 924, 420 S.E.2d 519, 521 (1992).

The rule is the same for administrative proceedings.[1]  "When a deputy commissioner refuses to admit evidence . . . 'the party must proffer or avouch the evidence for the record.'"  Daniel Constr. Co. v. Tolley, 24 Va. App. 70, 79, 480 S.E.2d 145, 149 (1997) (quoting Smith v. Hylton, 14 Va. App. 354, 357, 416 S.E.2d 712, 715 (1992)).  "[O]therwise, the appellate court has no basis to decide whether the party was prejudiced by the deputy commissioner's error."  Daniel Constr. Co., 24 Va. App. at 79, 480 S.E.2d at 149 (citation omitted).

In the instant case, employer asked claimant whether, before his loss of vision episode, he ever thought work stress was a factor in his high blood pressure, a question clearly relevant to his awareness of the possibility of an occupational disease.[2]

---

[1]In the administrative context, parties must proffer excluded evidence to complete the record for review within the agency as well as in the appellate court.  The Workers' Compensation Commission regularly relies on proffered evidence and rejects claims for review in the absence of proffer.  See, e.g., Harrison v. Mary Washington Hosp., Claim No. 1755140 (Workers' Comp. Comm'n Jan. 23, 1997) (deputy commissioner initially accepted report only as a proffer and later admitted it as evidence); Roman v. Holland, Claim No. 1679334 (Workers' Comp. Comm'n June 11, 1996) (commission could not review exclusion of testimony in absence of proffer); Miller v. James City County, Claim No. 1722233 (Workers' Comp. Comm'n Oct. 17, 1995) (commission cannot determine whether error was harmful without proffer); Jackson v. Castle Bros. Track & Roller, Claim No. 1629399 (Workers' Comp. Comm'n Aug. 24, 1994) (proffer demonstrated error in exclusion of testimony; decided on other grounds); Williams v. Nielson Constr. Co., Claim No. 1515279 (Workers' Comp. Comm'n Sept. 14, 1993) (review of proffer of excluded testimony reveals exclusion was harmless error).

[2]Though the question did not specify "work" stress, the context shows that the parties were discussing the stress associated with being a police officer.

The deputy commissioner ruled that claimant's reply would not be material. Claimant did not answer the question, and employer did not proffer any expected testimony. The content and timing of claimant's knowledge of the relationship between his work and his disease were clearly relevant to the statute of limitations issue. However, we have "no basis to decide whether [employer] was prejudiced by the deputy commissioner's error," because employer failed to proffer the expected answer. Id. Consequently, we cannot consider the exclusion of this evidence on appeal.

### III. STATUTE OF LIMITATIONS

The Workers' Compensation Act provides that claimants must file for compensation for occupational diseases within "two years after a diagnosis . . . is first communicated to the employee." Code § 65.2-406(A)(5). The statute "does not require that an employee receive from a physician a communication that his disease is work related." City of Alexandria v. Cronin, 20 Va. App. 503, 508, 458 S.E.2d 314, 317 (1995), aff'd, 252 Va. 1, 471 S.E.2d 184 (1996). It requires only that he "learn that the condition is an occupational disease for which compensation may be awarded." Id. at 509, 458 S.E.2d at 317.

"Whether a diagnosis of an occupational disease was communicated and when the communication occurred are factual determinations." Uninsured Employer's Fund v. Mounts, 24 Va. App. 550, 558, 484 S.E.2d 140, 144 (1997) (citing Roller v. Basic

<u>Constr. Co.</u>, 238 Va. 321, 329, 384 S.E.2d 323, 326 (1989)). On appeal, we will uphold the commission's findings of fact when they are supported by credible evidence. <u>See</u> <u>Mounts</u>, 24 Va. App. at 558, 484 S.E.2d at 144 (citing <u>James v. Capitol Steel Constr. Co.</u>, 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989)).

Viewed in the light most favorable to claimant, who prevailed before the commission, <u>see</u> <u>Fairfax County v. Espinola</u>, 11 Va. App. 126, 129, 396 S.E.2d 856, 858 (1990), the record establishes that claimant had no knowledge of his heart disease until after the October 1994 loss of vision episode. Additionally, although claimant was aware that he had hypertension in the 1970s, Dr. Melhorn's letter and claimant's testimony about his treatment provide credible evidence that claimant did not learn of any work connection to the condition or that he had a compensable occupational disease before October 1994. Thus, based upon this record, we cannot hold as a matter of law that the commission erred in finding that claimant's application was not barred by the statute of limitations.

IV.   COMPENSABLE OCCUPATIONAL DISEASE

To recover compensation for an ordinary disease of life as an occupational disease, a claimant must establish "by clear and convincing evidence, to a reasonable medical certainty, that [his illness] arose out of and in the course of his employment." Code § 65.2-401.[3] However, the legislature "has accorded policemen

---

[3]In 1997 Code § 65.2-401 was amended to delete "to a reasonable medical certainty," and to add "(not a mere

who suffer from heart disease or hypertension preferential status."  Department of State Police v. Talbert, 1 Va. App. 250, 253, 337 S.E.2d 307, 308 (1985).  Code § 65.2-402 creates a rebuttable presumption that a causal connection exists between an individual's employment as a police officer and certain diseases.

"A presumption is a rule of law that compels the fact finder to draw a certain conclusion . . . from a given set of facts."  Martin v. Phillips, 235 Va. 523, 526, 369 S.E.2d 397, 399 (1988) (citing Simpson v. Simpson, 162 Va. 621, 641-42, 175 S.E. 320, 329 (1934)).  "The primary significance of a presumption is that it operates to shift to the opposing party the burden of producing evidence tending to rebut the presumption."  Martin, 235 Va. at 526, 369 S.E.2d at 399.  Here, "[t]he effect of the presumption is to eliminate the need for a claimant to prove a causal connection between his disease and his employment."  City of Norfolk v. Lillard, 15 Va. App. 424, 426, 424 S.E.2d 243, 244-45 (1992).  "In the absence of competent evidence to the contrary, the statutory presumption controls, and the claimant prevails."  Fairfax County Fire & Rescue Dep't v. Mitchell, 14 Va. App. 1033, 1035, 421 S.E.2d 668, 670 (1992).

To trigger the presumption, claimant need only prove his occupation and his disability from heart disease or hypertension, the diseases identified in Code § 65.2-402.  Once claimant has established his prima facie case, "[t]he presumption shifts the

probability)."

12

burden of going forward with the evidence from the claimant to his employer." Id.

Proof of claimant's disability from heart disease or hypertension depends upon medical evidence. "A question raised by conflicting medical opinion is a question of fact." Department of Corrections v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986). "Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991).

In the instant case, the commission found that "the medical records sufficiently establish the presence of coronary artery disease," under Code § 65.2-402. Dr. Tulou testified that a thallium scan showed inadequate blood flow through the coronary arteries. This testimony provides credible evidence in support of the commission's finding. "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) (citation omitted). Consequently, we cannot hold that the commission erred in finding that the claimant established a compensable occupational disease, utilizing the presumption contained in Code § 65.2-402.

V.  SUFFICIENCY OF EMPLOYER'S REBUTTAL EVIDENCE

In a recent decision, the Supreme Court reaffirmed the

13

standard for an employer seeking to rebut a law enforcement officer's use of the causation presumption. "[I]n order to overcome the statutory presumption, the employer merely 'must adduce competent medical evidence of a non-work-related cause of the disabling disease.'" Augusta County Sheriff's Dep't v. Overbey, No. 962561 (Oct. 31, 1997), ___ Va. ___, ___ S.E.2d ___ (1997) (citing Doss v. Fairfax County Fire & Rescue Dep't, 229 Va. 440, 442, 331 S.E.2d 795, 796 (1985)). The Court announced that

> nothing in the statute or the several decisions of this Court dealing with rebuttal of this presumption suggests that the employer has the burden of excluding the "possibility" that job stress may have been a contributing factor to heart disease.

Overbey, ___ Va. at ___, ___ S.E.2d at ___.

In the instant case, Dr. Davis indicated that the "probable cause of [claimant's] condition is genetic and environmental," and Dr. Hess attributed claimant's cardiovascular disease to "a genetic predisposition in combination with his risk factors." Under the standard set forth in Overbey, this evidence of a genetic cause sufficiently rebutted the statutory presumption that claimant's heart disease is work-related.

Without the benefit of the statutory presumption to establish a causal relationship between his job as a police officer and his heart disease, claimant "had the burden of 'establishing by clear and convincing evidence, to a reasonable degree of medical certainty,' that his [condition] arose out of

14

and in the course of his employment."  <u>Overbey</u>, ___ Va. at ___,
___ S.E.2d at ___.  Although claimant's job was undeniably
stressful, claimant failed to meet this burden.  None of the
doctors opined to a reasonable degree of medical certainty that
job stress was a causative factor in the disease claimant
suffered.  <u>Cf.</u> <u>Duffy v. Commonwealth</u>, 22 Va. App. 245, 251, 468
S.E.2d 702, 705 (1996) (employer's evidence failed to rebut
presumption by a preponderance of the evidence and the statutory
presumption thus controls).  Thus, the evidence was insufficient
to establish "to a medical certainty" that his heart disease
arose out of his employment.  Therefore, we are required to
reverse the commission's award and dismiss claimant's application
for benefits.

<u>Reversed.</u>