COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Humphreys and Senior Judge Overton


KATHY FAYE PHILLIPS
                                        MEMORANDUM OPINION*
v.    Record No. 2129-02-3                  PER CURIAM
                                         DECEMBER 31, 2002
RADA/RURAL AREA DEVELOPMENT
 ASSOCIATION, INC. AND
 AMERICAN HOME ASSURANCE COMPANY


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              (Anthony E. Collins; Collins & Collins, on
              brief), for appellant.

              (Robert M. Himmel; Gentry Locke Rakes &
              Moore, on brief), for appellees.


     Kathy Faye Phillips contends the Workers' Compensation

Commission erred in finding that her psychological impairment

was not caused by an "obvious sudden shock or fright" and, thus,

was not a compensable injury by accident.  Upon reviewing the

record and the parties' briefs, we conclude that this appeal is

without merit.  Accordingly, we summarily affirm the

commission's decision.  Rule 5A:27.

     Our standard of review is well established.

              On appeal we view the evidence in the
              light most favorable to the prevailing
              party, in this case, the employer.  We
              accept the commission's factual findings
              when they are supported by credible

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

evidence. Unless this Court determines that, as a matter of law, [Phillips] proved by a preponderance of the evidence that [she] sustained a compensable injury, the commission's contrary finding is binding and conclusive.

Owens v. Va. Dept. of Transp., 30 Va. App. 85, 87, 515 S.E.2d 348, 349 (1999) (citations omitted).

Phillips testified that on her third day working for RADA/Rural Area Development Association, Inc., Susan Matherly was training her to use a computer at the office of the Virginia Employment Commission. While Phillips was seated next to Matherly in front of the computer screen, Gary Hale, an Employment Commission manager, approached them "yelling and cursing." Phillips testified that when she tried to turn her chair to rise she could not do so because Hale was so close to her. She testified that Hale swung his arms while holding a large stack of papers and asked about a person named Jennifer. Phillips testified she was afraid that Hale might hit her.

Phillips also testified that Matherly responded to Hale and that Matherly "was very nice to him." Matherly told Hale to contact their supervisor and continued to talk to Hale without arguing. After a few minutes, Hale stomped away.

Phillips, who had earned a bachelor's degree in psychology in 1989, admitted that as a social worker she had been previously exposed to people talking loudly to her. She testified, however, that after the incident with Hale she was

- 2 -

"scared to death" and smoked a cigarette even though she was not a smoker. She described herself as shaking, "tore all to pieces," and crying, and she testified that later she began to experience diarrhea, insomnia, and an inability to concentrate.

Matherly testified that Hale was "upset" when he approached the desk, but disagreed that he was "very angry." Although Matherly agreed that Hale raised his voice and that he was a large man, she did not recall any movements by Hale that made her feel threatened. Matherly said she stood, took a couple of steps towards Hale, and conversed with him, shoulder-to-shoulder, for less than ten minutes. She answered his questions about another employee and directed him to talk to a supervisor. Matherly testified that Hale's questions and comments were directed toward her.

Dr. Souhail G. Shamiyeh, an internist who had treated Phillips since October 1997 for various conditions, diagnosed Phillips with a post-traumatic stress disorder as a result of the December 6, 2000 incident, and referred her to Susan G. Myers, a licensed clinical social worker, for counseling. Phillips told Myers that the incident "caught [her] off guard and frightened [her]," that Hale "got up right in [her] face and started talking to [her] about [her] [separated] husband," and that she feared Hale would strike her. Myers also diagnosed post-traumatic stress disorder and began monthly therapy

sessions with Phillips.  Both Dr. Shamiyeh and Myers reported that Phillips's disorder was related to the work incident.

Dr. Robert S. Brown, a psychiatrist, who reviewed Phillips's medical records upon employer's request, opined that post-traumatic stress disorder is diagnosed when an individual is exposed to intense fear, helplessness, or horror after experiencing, witnessing, or confronting an event that threatened death or serious injury.  In giving this opinion, he relied in part upon the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition-Text Revision.  Dr. Brown also opined that the fact that Phillips overheard an argument at work, which not directed at her, would not have caused her to suffer from a post-traumatic stress disorder, depression or a panic disorder.

Upon this evidence, the commission found as follows:

> We agree that [Phillips] suffers a psychological impairment.  However, she has not proven that her condition was caused by a "sudden shock or fright" as contemplated by caselaw interpreting the Virginia Workers' Compensation Act. . . .  In this case, [Phillips] was at or nearby a conversation, albeit an apparently loud one, which was not directed toward her and in which she was not a participant.
>
> Hale abruptly approached [Phillips] and Matherly, but he did not touch, strike, or reach for either woman.  There was no testimony that he verbally attacked or threatened [Phillips].  Instead, a conversation transpired between Hale and Matherly.  Significantly, Matherly testified that she did not perceive Hale's actions as

- 4 -

threatening.  To the contrary, she stood shoulder-to-shoulder with him.  [Phillips] admitted that Matherly remained calm and continued to talk to Hale for several minutes.  It is undisputed that [Phillips's] education and experience includes psychological and social work.  She confirmed encountering situations during her career where people talked loudly to her.

For these reasons, we are not persuaded that simply overhearing a loud and perhaps rude or boisterous conversation rises to the level of an "obvious sudden shock or fright."

"Post-traumatic stress disorder is a compensable injury if caused by either a physical injury or an obvious sudden shock or fright arising in the course of employment."  Daniel Const. Co. v. Tolley, 24 Va. App. 70, 77, 480 S.E.2d 145, 148 (1997).  The commission determined that because the loud conversation between Hale and Matherly was not directed at Phillips, was not verbally or physically threatening, and was not out of the ordinary experience Phillips had encountered as a social worker, it did not qualify as the type of sudden shock or fright from which a compensable injury may arise.  Those conclusions are supported by credible and sufficient evidence.

As fact finder, the commission was entitled to accept Matherly's testimony regarding Hale's conduct and reject those portions of Phillips's testimony to the contrary.  It is well settled that credibility determinations are within the fact finder's exclusive purview.  Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 381, 363 S.E.2d 433, 437 (1987).

- 5 -

Because Phillips's impairment was not proved to be causally related to a physical injury or to an obvious sudden shock or fright in her employment, the commission did not err in finding that it was not compensable as an injury by accident.

For these reasons, we affirm the commission's decision.

Affirmed.