COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judge Petty and Senior Judge Coleman
Argued at Salem, Virginia


SOUTHWESTERN VIRGINIA MENTAL
  HEALTH INSTITUTE
                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0489-06-3          CHIEF JUDGE WALTER S. FELTON, JR.
                                                      OCTOBER 10, 2006
SHEILA MAE WRIGHT


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Scott John Fitzgerald, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General; Maureen Riley Matsen, Deputy
            Attorney General; Peter R. Messitt, Senior Assistant Attorney
            General, on brief), for appellant.

            (Hilary K. Johnson; Hilary K. Johnson, P.C., on brief), for appellee.
            Appellee submitting on brief.


        Southwestern Virginia Mental Health Institute (employer) asserts that the Virginia Workers'

Compensation Commission (commission) erred in awarding benefits to Sheila Mae Wright

(claimant) for delayed post-traumatic stress disorder arising out of a sexual assault that occurred

while claimant was on duty monitoring patients in employer's dining facility.  Finding credible

evidence in the record to support the commission's finding that claimant's psychological disability

resulted from a compensable injury by accident, we affirm the commission's award.

                                        BACKGROUND

        "On appeal, factual findings of the commission will not be disturbed if based on credible

evidence." Anthony v. Fairfax County Dep't of Family Servs., 36 Va. App. 98, 103, 548 S.E.2d

273, 275 (2001) (citing Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

S.E.2d 876, 877 (1986)).  "Whether credible evidence exists to support a factual finding is a question of law which is properly reviewable on appeal." Hercules, Inc. v. Gunther, 13 Va. App. 357, 361, 412 S.E.2d 185, 187 (1991) (citing Ablola v. Holland Road Auto Center, Ltd., 11 Va. App. 181, 183, 397 S.E.2d 541, 542 (1990)).  "Causation is a factual determination to be made by the commission, but the standards required to prove causation and whether the evidence is sufficient to meet those standards are legal issues which we must determine." Anthony, 36 Va. App. at 103, 548 S.E.2d at 276 (citing Morris v. Morris, 238 Va. 578, 385 S.E.2d 858 (1989)). In determining whether credible evidence exists to support the commission's factual findings, we view the evidence in the light most favorable to claimant, the party prevailing below.  Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986).

So viewed, the record shows that claimant worked as a psychiatric aide for employer at Southwestern Virginia Mental Health Institute, a facility that houses sexual offenders, among other patients.  On June 30, 2002 while claimant was monitoring patients in employer's dining room, Rusty Lewis and Chester Bobbitt, both convicted sex offenders and patients in employer's facility, approached her.  At the hearing before Deputy Commissioner Burchett, claimant testified that Lewis and Bobbitt

> got really close up in my face.  They got so close that I couldn't move.  I asked them to step back away from me, and they started laughing.  Then Rusty Lewis started rubbing my right arm, and Chester Bobbitt started rubbing my left arm, and they continued to laugh.  I asked them to stop.  I asked them to stop more than once.  Chester Bobbitt reached to grab my left breast.
>
>      \*    \*    \*    \*    \*    \*    \*
>
> I went to move back.  He did pinch it.  When I moved back, I realized I was up against the wall, and I could do nothing.  I was trapped in that corner.  I don't remember if it was Rusty or Chester that took the radio out of my hands.  Then I realized they had taken control.

Claimant explained that "[i]t was something that happened really fast, but it felt like it went on forever." Claimant was able to push her way through both men to reach the door beside her, obtain her radio, and put her key in the door. As claimant was going through the door, "Chester Bobbitt said he wanted to f-u-c-k [her]. He grabbed [her] crotch area, and they continued to laugh."

Claimant immediately reported the incident to Peggy Brooks, the shift head nurse; Mike Stockberger, the shift supervisor; and Freddie Counts, the RN who worked with her on Ward G. She also reported the incident to her supervisor, Penny Pickle, the day shift head nurse, the following morning. Claimant told her supervisor that she was "going to try to be okay" and that she would continue working. She did not report the incident to law enforcement officials, and thereby was not entitled to the presumption provided in Code § 65.2-301(A).[1]

Claimant conceded that there were no visible marks left on her body where the men had touched her. However, by January 2003 she began noticing that "something was wrong." She reported that she suffered pain in her joints, nausea, severe insomnia, panic attacks, anxiety, and irritability.

In March 2003, claimant saw Dr. Brian H. Steifel, a family practitioner with Royal Oak Medical Associates. Dr. Steifel reported claimant complained of symptoms of chest congestion, cough, sore throat, and decreased energy. In April 2003, claimant told Dr. Patterson, her personal physician and a member of Royal Oak Medical Associates, that she was "[u]nder a great deal of pressure at her work place" and that she was "depressed, nervous, [and] anxious." In May 2003,

---

[1] Code § 65.2-301(A) provides:

> Any employee who, in the course of employment, is sexually
> assaulted . . . and promptly reports the assault to the appropriate
> law-enforcement authority, where the nature of such employment
> substantially increases the risk of such assault, upon a proper
> showing of damages compensable under this title, shall be deemed
> to have suffered an injury arising out of the employment and shall
> have a valid claim for workers' compensation benefits.

claimant saw Lynda Warner, a licensed clinical social worker. Warner diagnosed claimant with

major depression.[2] She continued to counsel claimant before referring her to Dr. Douglass, a

psychiatrist, in July 2003.

In August 2003, claimant saw Dayle Zanzinger, a family nurse practitioner with Royal Oak

Medical Associates. Zanzinger noted that claimant was

> under a lot of emotional stress. Reports she was sexually assaulted
> in July of 2002 by 2 patients. She first discussed this with JEP in
> August of 2002.[3] She is seeing Linda Warner and just recently
> revealed this information to her.

Zanzinger diagnosed claimant with severe stress and probable post-traumatic stress disorder.

Royal Oak Medical Associates completed a "Workman's Compensation Injury Report" on

August 18, 2003. The report indicated that claimant suffered from post-traumatic stress disorder.

After completing a psychiatric evaluation of claimant, Dr. Douglass concurred, diagnosing claimant

with delayed post-traumatic stress disorder on September 9, 2003. Dr. Douglass referred claimant

to Dr. Ludgate, a specialist in post-traumatic stress disorder, for treatment.

Dr. Ludgate evaluated claimant in October 2003. By letter dated January 13, 2004, Dr.

Ludgate concluded that claimant suffered delayed post-traumatic stress disorder as a "direct

consequence of the sexual assault she endured at her place of work on June 30, 2002." He noted

that "[a]fter the assault she initially went back to work, despite significant psychological distress

(anxiety and hypervigilance)." Dr. Ludgate stated that claimant was unable to work due to her

incapacitating symptoms, and opined that her condition should qualify as a workers' compensation

condition:

---

[2] A review of claimant's medical records shows that she was undergoing treatment for depression prior to the June 30, 2002 sexual assault.

[3] Zanzinger later corrected the record to read, "Discussion was on April 2003 instead of August 2002."

- 4 -

The presence of a serious psychiatric disorder precipitated by a work assault is comparable to a disease in that the words disorder and disease are interchangeable in this regard. Also, she has suffered a work injury or trauma but this is of a psychological nature, which is as incapacitating as any physical injury.

The deputy commissioner determined that claimant had failed to prove a compensable injury by accident, noting that, "although the actions of the two inmates were egregious and noxious, we cannot say the circumstances were so shocking, frightening, traumatic, catastrophic, or unexpected to constitute a compensable injury under the Act." In support of his determination, the deputy commissioner reasoned that there was "no evidence that the conduct of the two inmates was directed at claimant because of her status as an employee with this employer." The deputy commissioner also articulated his concern that claimant had not reported the sexual assault to the numerous health care professionals from whom she was seeking treatment until August 15, 2003. From this observation, the deputy commissioner found that "the opinions expressed by Dr. Ludgate and Dr. Douglass relative to claimant's condition being caused by the incident in question lack probative value because their opinions are not based upon complete and accurate histories." Accordingly, he concluded that "there is no probative medical evidence to causally relate any injury or condition to" the sexual assault.

On review, the full commission reversed, finding that the June 30, 2002 sexual assault was "sufficiently dramatic and unexpected so as to shock the conscience." The commission stated that "[w]hile [] claimant's work environment placed her where unacceptable conduct was anticipated and recurring, we do not think that touching where she was touched could be anticipated."

ANALYSIS

Employer argues the trial court erred in determining that claimant's delayed post-traumatic stress disorder qualifies as a compensable psychological injury by accident. Specifically, employer contends that the sexual assault suffered by claimant does not constitute a precipitating event that is

so catastrophic, dramatic, or frightening as to shock the conscience because occurrences of assault, even sexual assault, are an anticipated and recurring part of claimant's employment.

In order to qualify as a compensable injury by accident under the Virginia's Workers' Compensation Act, a purely psychological injury, such as delayed post-traumatic stress disorder, must be causally related to a physical injury or to an obvious sudden shock or fright arising in the course of employment. Anthony, 36 Va. App. at 103, 548 S.E.2d at 276; Owens v. Va. Dep't of Transport., 30 Va. App. 85, 88, 515 S.E.2d 348, 349 (1999); Daniel Constr. Co. v. Tolley, 24 Va. App. 70, 77, 480 S.E.2d 145, 148 (1997); Chesterfield County v. Dunn, 9 Va. App. 475, 477, 389 S.E.2d 180, 182 (1990).

It is undisputed that the June 30, 2002 sexual assault arose in the course of claimant's employment. Employer asserts on appeal that "[i]t is the very nature of [claimant's] employment to interact with patients, including sex offenders, every day" and that assaults, including sexual assaults, are "expected and recurring" in claimant's place of employment due to the character of its mission. Because "[a] physical assault [] constitute[s] an 'accident' within the meaning of the Act when it . . . was the result of an actual risk arising out of employment," Butler v. Southern States Coop., Inc., 270 Va. 459, 465, 620 S.E.2d 768, 772 (2005) (quoting Reamer v. National Service Industries, 237 Va. 466, 470, 377 S.E.2d 627, 629 (1989)), the sole issue on appeal is whether the sexual assault on claimant was an "obvious sudden shock or fright," Anthony, 36 Va. App. at 103, 548 S.E.2d at 276, such that claimant's delayed post-traumatic stress disorder qualifies as a compensable psychological injury by accident under the Act.

"[T]he types of precipitating events that give rise to purely psychological compensable injuries are consistently described as shocking, frightening, traumatic, catastrophic and unexpected." Anthony, 36 Va. App. at 103-04, 548 S.E.2d at 276 (citing Burlington Mills Corp. v. Hagood, 177 Va. 204, 209-11, 13 S.E.2d 291, 293-94 (1941)). The record reflects that claimant

immediately reported the sexual assault to her superiors. "A complaint made by a victim of sexual assault 'has long been considered a[] . . . natural expression of the victim's feelings in response to the offense.'" Wilson v. Commonwealth, 46 Va. App. 73, 83, 615 S.E.2d 500, 505 (2005) (quoting Lindsey v. Commonwealth, 22 Va. App. 11, 14, 467 S.E.2d 824, 826 (1996)). Moreover, in her testimony before the deputy commissioner, claimant explained that she was "up against the wall, and [] could do nothing [because she] was trapped in th[e] corner." She went on to explain that she "just couldn't believe it was happening." Claimant's immediate report of the events to her supervisors following the sexual assault, and her description of the incident during her testimony clearly established that the sexual assault was traumatic, frightening, and unexpected.

Employer also argues that claimant's psychological injury is not compensable because the precipitating event is indistinguishable from the precipitating event in Anthony. We disagree. In Anthony, a mother and grandmother pushed a Fairfax County social worker off a porch when the worker attempted to take emergency custody of two children at a day care center. We affirmed the commission's denial of benefits, reasoning that the "incident did not rise to the level of the type of sudden shock or fright from which a compensable injury may arise" because claimant had admitted her work environment required contact with angry, confrontational parents. Anthony, 36 Va. App. at 105, 548 S.E.2d at 277.

Like the claimant in Anthony, claimant acknowledged that her work environment included interaction with sexual offenders and other aggressive patients and that physical assaults by patients were not out of the ordinary. However, the assault in Anthony was not sexual in nature. Here, two known sex offenders touched claimant's breast and grabbed her genital area while laughing and making lewd comments. Claimant was cornered out of sight of the other staff members working in the dining room. During the attack the two patients took claimant's radio, rendering her unable to call for assistance and more vulnerable to the patients' attacks.

We conclude credible evidence exists in the record to support the commission's determination that the sexual assault on claimant constituted a precipitating event that was "sufficiently dramatic and unexpected so as to shock the conscience." We further conclude from the unrefuted medical evidence in the record that claimant's delayed post-traumatic stress disorder was causally related to the sexual assault she sustained in the course of her employment. Accordingly, we affirm the commission's award of benefits.

<u>Affirmed.</u>