COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Humphreys and Agee
Argued at Chesapeake, Virginia


K & G ABATEMENT COMPANY AND
 GRANITE STATE INSURANCE COMPANY
                                         OPINION BY
v.    Record No. 0164-02-1         JUDGE G. STEVEN AGEE
                                        AUGUST 20, 2002
THOMAS E. KEIL (DECEASED) AND
 PEGGY T. KEIL (WIDOW)


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          F. Nash Bilisoly (Brian L. Sykes; Vandeventer
          Black, LLP, on briefs), for appellants.

          Stephen A. Strickler (Matthew H. Kraft;
          Inman & Stickler, PLC, on brief), for
          appellees.


     K & G Abatement Company (employer) appeals the decision of

the Workers' Compensation Commission (the commission) to award

benefits to Peggy T. Keil (claimant) for the death of her

husband, Thomas Keil (Keil), an employee of employer.  It

contends the commission erred by (1) refusing to permit it to

produce rebuttal evidence, (2) denying its motion in limine and

(3) finding that claimant established that Keil's fatal injuries

arose out of his employment.  We disagree and affirm the

commission's decisions.

                         I.  BACKGROUND

     Keil, age fifty-nine, was working on the roof of S.H.

Clarke Academy in Portsmouth on the morning of November 10,

1998.  The school is primarily a one-story building, but has a two-story extension where Keil and two other employees were working.  At approximately 10:00 a.m., Keil left the second story roof workstation to descend to the ground to place a telephone call.  He climbed down a permanent ladder to the first story roof where he was then out of the other roofers' sight.  In order to go from the first story roof to the ground, Keil had to lower a twenty-foot extension ladder to the ground.  Several people inside the school heard the sound of the extension ladder being displaced and something striking the concrete pavement.

Shortly thereafter, Keil was found lying on the ground combative, disoriented, mumbling and with an open-head wound.  Loose gravel from the roof was found on the ground around him.  No one witnessed Keil's fall, and Keil was unable to provide anyone with the details of what happened.  He was transported by ambulance to a nearby trauma center.

An angiogram was performed at the trauma center after which Keil suffered cardiac arrest.  Keil was revived but subsequently arrested two more times and was pronounced dead at 6:04 p.m.  No autopsy was performed.  The medical examiner, Dr. Hoffman, filed a certificate of death stating that death was caused by "closed chest and head injuries."

Claimant filed a claim with the commission to receive benefits.  In defense, employer filed three medical reports.  First, employer submitted a letter from Dr. Waters, the

-

neurologist who examined Keil after he suffered cardiac arrest and pronounced him neurologically dead.  Dr. Waters wrote:

> I would disagree with [the medical examiner] that Mr. Keil's death was from a closed head injury.  After reviewing the events which transpired while he was hospitalized at Norfolk General Hospital, the type of death he suffered from was very precipitous and, indeed, very inconsistent with a patient dying from brain swelling or any type of intracranial process.  I therefore believe that [the medical examiner's] opinion, that the cause of death was a closed head injury, is inaccurate.

Employer also submitted a letter from Dr. Collins, the trauma physician who treated Keil upon his admission to the hospital.  Dr. Collins concluded, "without an autopsy I am unable to speculate about the possible causes of [Keil's] demise."

The third letter submitted by employer was from Dr. Hagberg, the cardiac and thoracic surgeon who examined Keil's angiogram, but who did not personally examine Keil.  In response to questions posed by employer, Dr. Hagberg answered that he was unable to determine, with a reasonable degree of medical certainty, what caused the cardiac arrest which led to Keil's death.[1]

---

[1] He did write that (1) it was his opinion that it was "unlikely, but possible" that the blunt trauma of the fall caused cardiac arrest; (2) that Keil's prior medical history of hyperlipidemia, obesity, hypertension and atypical chest pain was sufficient to cause cardiac arrest, and (3) "[a]ssuming that, because no autopsy was performed, it is not possible to state with a reasonable degree of medical certainty what was the

-

The commission scheduled a hearing before a deputy commissioner for June 21, 2000. On June 9, 2000, claimant filed two short lists of questions answered by Drs. Waters and Hagberg in response to inquires from claimant's counsel. Dr. Waters answered, "yes," that it was his opinion that Keil's multiple and significant head injuries (1) contributed to his ultimate demise and (2) Keil "most probably died as a result of his fall from the roof."

In a separate inquiry, Dr. Hagberg answered the following question, "no":

> Now being advised that Mr. Keil [fell] from a height of 15 to 21 feet onto concrete (whereas previously you had been advised that he had only fallen 8 to 10 feet) and further being advised that Mr. Keil was localizing pain in his head and lower quadrant after the accident and upon further review of the medical records, can you state with a reasonable degree of medical certainty that the most likely cause of Mr. Keil's cardiac arrest was a myocardial infarction?

At the hearing before the deputy commissioner, claimant introduced the responses from Drs. Waters and Hagberg without objection from employer. The deputy commissioner granted employer's request for permission to depose Drs. Waters and Hagberg post-hearing and that the record be kept open in order to receive those depositions and a previously scheduled

---

actual cause of cardiac arrest," "[t]he most likely cause of [Keil's] demise was a myocardial infarction."

-

deposition of Dr. Hoffman.  No other cause to leave the record open was cited by employer or acknowledged by the deputy commissioner.

Dr. Hagberg testified, by deposition, that he only examined Keil from a distance because Keil suffered cardiac arrest.  He "merely interpreted the aortogram" and opined that Keil died from cardiac arrest but was unable to determine what led to the arrest.  Dr. Hagberg stated that any theory he posed would be speculation.

Dr. Waters testified in his deposition that he performed a neurological examination of Keil and determined that Keil demonstrated no neurological functions.  He reviewed the CT scan taken of Keil's head and noted skull fractures, a bruise on the right side of the brain, some blood in the frontal lobes, an epidural hemorrhage and a subarachnoid hemorrhage.  He opined that Keil's head injuries did not cause the cardiac arrest, but was unable to determine what did cause the arrest.

Subsequent to these depositions, but prior to the deposition of Dr. Hoffman, employer requested permission to depose Dr. Collins and to have an expert cardiovascular physician testify.  Employer argued the additional evidence was necessary and complained that it "had presented all of the medical opinions needed to defend [its] case five months prior to the hearing and that it was manifestly unfair to allow counsel for the claimant to produce new medical opinions . . .

-

days prior to the hearing without allowing [it] to take reasonable steps 'to meet that evidence.'"  The employer's request was denied by the deputy commissioner.

In his deposition, Dr. Hoffman, the medical examiner, opined, to a reasonable degree of medical certainty, that Keil suffered an accidental death caused by closed head and closed chest injuries.  This is the same opinion he submitted on the death certificate.  Dr. Hoffman further opined that an aortic dissection discovered in Keil's aortagram "[was] evidence that there was acceleration/deceleration injury inside the chest." Finally, he stated there was no real evidence of myocardial infarction.

> Here, we have no real evidence of myocardial infarction . . . .  We have some head injuries that we know are not sufficient by themselves to cause death, we have some closed chest injuries that we know are not what we see sufficient to cause death, but we have no evidence of myocardial infarction.  It is not speculation that he fell.  It is not speculation that he has some chest injuries.  It is not speculation he has some head injuries.  It would be extreme speculation to say he had a myocardial infarction, and that is where we [determined] accidental death . . . .  We looked at this not once, but three separate times, and discussed it as a matter of policy with the chief medical examiner in Richmond.

Employer then filed a motion in limine to limit the introduction of portions of the deposition testimony of

-

Drs. Waters and Hoffman. Employer alleged the physicians' testimony was speculative and without foundation in medical facts. The deputy commissioner denied the motion, finding the testimony was not conjectural or speculative.

The deputy commissioner issued a February 2, 2001 opinion, which awarded claimant compensation for burial and transportation expenses related to the deceased and weekly compensation in the amount of $534 for the maximum statutory period allowed. In making the award, the deputy commissioner applied a presumption that Keil's death was due to an unexplained accident, which arose out of employment, and that employer had not overcome the presumption. The deputy commissioner further held claimant would prevail, even without the presumption, based on the totality of the evidence.

Employer appealed to the full commission the order denying its motion for additional evidence, the order denying the motion in limine, and the award. The commission affirmed the deputy commissioner's evidentiary rulings and the award in favor of claimant.

The commission found that "[t]here is no question that [Keil] was in the course of his employment when he began leaving the roof of the school to make a telephone call." This left only the issue of whether Keil's fatal injuries were due to an accident arising out of his employment. The commission held that claimant was entitled to the presumption established in

-

Southern Motor Lines v. Alvis, 200 Va. 168, 104 S.E.2d 735

(1958). Notwithstanding the presumption, the commission also

found claimant had presented sufficient evidence to sustain the

award even if the presumption did not apply.

The commission found that the medical evidence presented

consisted of two medical opinions that Keil died as a result of

the fall, and two opinions in which the physicians were unable

to state a cause of death and could only speculate. The

commission held the other evidence presented confirmed

> the likelihood that [Keil] died as a result
> of the fall. Individuals inside the school
> heard Mr. Keil hit the concrete and heard
> the ladder being displaced. There was loose
> gravel [from the roof] at the foot of the
> ladder. [In addition, Keil] did not
> indicate pain in his chest either before or
> after the accident, so it would be sheer
> speculation to assume that he died from a
> myocardial infarction unrelated to his fall.

Considering the totality of the evidence presented, the

commission affirmed the award of benefits to claimant. Employer

now appeals the commission's decisions to this Court.

II.  EMPLOYER'S MOTION FOR ADDITIONAL EVIDENCE POST-HEARING

Employer contends it was denied due process by the deputy

commissioner's decision to deny its requests to depose

Dr. Collins and to have an expert cardiovascular physician

testify post-hearing.[2]  For the following reasons, we hold

---

[2] Related to this issue, employer poses the following
question in the "Questions Presented" section of its brief:  "In
matters involving the refusal to allow the introduction of

-

employer was not denied due process by the deputy commissioner's denial of its post-hearing motions.

"[R]igid or technical rules of pleading, evidence, or practice in the conduct of hearings shall not apply [in matters before the commission] so long as the procedures adopted protect the substantial rights of the parties." Sergio's Pizza v. Soncini, 1 Va. App. 370, 376, 339 S.E.2d 204, 207 (1986). While the requirements in administrative proceedings may be more relaxed, "the commission must use procedures that 'afford the parties minimal due process safeguards.'" WLR Foods, Inc. v. Cardosa, 26 Va. App. 220, 227, 494 S.E.2d 147, 150 (1997) (quoting Soncini, 1 Va. App. at 376, 339 S.E.2d at 207).

While proceedings before the commission must comply with the requirements of due process, deputy commissioners generally have broad discretion to adapt the conduct of hearings to the circumstances of the case. See Kum Ja Kim v. Sportswear, 10 Va. App. 460, 470, 393 S.E.2d 418, 424 (1990). Because the commission is permitted to place limitations on the evidence that is submitted to it, so long as minimal due process safeguards are met, we review the decision for an abuse of

---

relevant evidence should the Commission be required to give the reasons for such refusal as opposed to summarily stating that the Deputy Commissioner 'acted reasonably?'" Employer, however, failed to present to this Court how it was prejudiced by the commission's action. Moreover, as we hold below that the deputy commissioner acted within his discretion, error, if any, committed by the commission in disposing of the underlying issue was harmless.

-

discretion.  See Daniel Constr. Co. v. Tolley, 24 Va. App. 70, 480 S.E.2d 145 (1997).

In the case at bar, claimant presented two very short reports to the commission to be considered as evidence in the case:  Three questions answered by Dr. Waters and four questions answered by Dr. Hagberg.  These brief reports were submitted prior to the June 21, 2000 hearing before the deputy commissioner.  Employer had previously submitted more extensive medical reports from these same physicians, as well as from Dr. Collins, but chose not to depose any of them.

At the June 21, 2000 hearing, employer did not object to the introduction of the reports submitted by claimant.  Employer's only request was to leave the record open to receive the depositions of Drs. Water and Hagberg.  This request was granted.

We hold that, under the circumstances of this case, the deputy commissioner did not abuse his discretion when he refused to permit employer to introduce additional rebuttal evidence.  The record indicates that the deputy commissioner left the record open after the June 21, 2000 hearing for the sole purpose of allowing employer to depose Drs. Waters, Hagberg and Hoffman.  That is all employer requested at the time of the hearing, when the record normally would have closed.  Had the employer desired the record to remain open for other purposes it had the opportunity to make that argument at the hearing, but it did not

-

do so.  The deputy commissioner only prohibited the generation of additional evidence for which the record had not been kept open.  Moreover, employer failed to identify any specific prejudice it suffered by virtue of the deputy commissioner's ruling.  Finally, employer failed to proffer any evidence from Dr. Collins or its expert witness by which appellate review could be made.  See Tolley, 24 Va. App. at 79, 480 S.E.2d at 149.

For all the foregoing reasons, we find the deputy commissioner did not abuse his discretion when he refused to permit employer to introduce additional rebuttal evidence for which the record had not been held open.  See id.

### III.  DENIAL OF THE MOTION IN LIMINE

Employer also contends the deputy commissioner erred in refusing to grant its motion in limine, which requested that portions of Drs. Hoffman's and Waters' depositions be disallowed on the basis that the testimony was, in employer's view, speculative, inconclusive and not substantive evidence. Assuming, without deciding, the deputy commissioner erred by denying employer's motion in limine, we find any error was harmless.

The commission did not rely on the alleged "speculative" portions of Drs. Hoffman's and Waters' depositions.  Instead, the commission, recognizing potentially inconclusive and speculative portions of the opinions, simply relied on those

-

portions evidencing Dr. Hoffman's opinion, made to a reasonable medical certainty, that Keil died as a result of closed head and chest injuries, and Dr. Waters' opinion that Keil died as a result of his fall, while recognizing Dr. Waters was unable to determine the exact mechanism which triggered cardiac arrest. The depositions were not used for other purposes and, therefore, it was harmless error if the deputy commissioner received any portions of the depositions that may be considered speculative. See generally, Ferguson v. Commonwealth, 16 Va. App. 9, 427 S.E.2d 442 (1993); Lavinder v. Commonwealth, 12 Va. App. 1003, 407 S.E.2d 910 (1991) (en banc).

We, therefore, will not reverse the decision to deny the motion in limine.

IV.  THE FATAL INJURY AROSE OUT OF KEIL'S EMPLOYMENT

Employer also contests the commission's decision to award benefits to claimant.  It contends the commission erred in finding the unexplained death presumption recognized in Southern Motor Lines Co. v. Alvis, 200 Va. 168, 104 S.E.2d 735, to be applicable to the claim and in finding the evidence sufficient to establish the fatal injury arose out of Keil's employment. For the following reasons, we agree with employer's contention that application of the Alvis death presumption was error. However, we affirm the commission's award as we find the evidence sufficient to establish Keil's death arose out of his employment.

-

Code § 65.2-101 requires a person who claims benefits under the Workers' Compensation Act to prove an "injury by accident arising out of and in the course of the employment."  The claimant must prove by a preponderance of the evidence that an injury arose out of the employment.  Marketing Profiles, Inc. v. Hill, 17 Va. App. 431, 433, 437 S.E.2d 727, 729 (1993) (en banc).  "The mere happening of an accident at the workplace, not caused by any work related risk or significant work related exertion, is not compensable."  Plumb Rite Plumbing Serv. v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989).

> An injury arises out of the employment "'when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.  Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment.[']"

Baggett & Meador Cos. v. Dillon, 219 Va. 633, 637-38, 248 S.E.2d 819, 822 (1978) (citations omitted).  Thus, "the arising out of test excludes 'an injury which comes from a hazard to which the employee would have been equally exposed apart from the employment.  The causative danger must be peculiar to the work, incidental to the character of the business, and not independent of the master-servant relationship.'"  Chesterfield v. Johnson,

-

237 Va. 180, 183-84, 376 S.E.2d 73, 75 (1989) (quoting United

Parcel Service v. Fetterman, 230 Va. 257, 258-59, 336 S.E.2d

892, 893 (1985)).

"The actual determination of causation is a factual finding

that will not be disturbed on appeal," if supported by credible

evidence.  Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688,

376 S.E.2d 814, 817 (1989); see Code § 65.2-706.  However,

"[w]hether an injury arises out of the employment is a mixed

question of law and fact and is reviewable [de novo] by the

appellate court."  Barbour, 8 Va. App. at 483, 382 S.E.2d at

305.  Yet, unless we conclude that claimant failed to prove

Keil's fatal injuries arose out of his employment, as a matter

of law, the commission's finding is binding and conclusive upon

us.  See Tomko v. Michael's Plastering Co., 210 Va. 697, 699,

173 S.E.2d 833, 835 (1970).

A.  THE ALVIS PRESUMPTION

In Southern Motor Lines Co. v. Alvis, 200 Va. 168, 104

S.E.2d 735, the Supreme Court of Virginia acknowledged the

following presumption in certain cases involving an unexplained

death:

> [W]here an employee is found dead as the
> result of an accident at his place of work
> or near-by, where his duties may have called
> him during the hours of his work, and there
> is no evidence offered to show what caused
> the death or to show that he was not engaged
> in his master's business at the time, the
> court will indulge the presumption that the
> relation of master and servant existed at

-

> the time of the accident and that it arose
> out of and in the course of his employment.

Id. at 171-72, 104 S.E.2d at 738-39 (internal citations omitted) (emphasis added).

In this case, the deputy commissioner found that the death presumption articulated in Alvis applied and that employer had not rebutted the presumption. The full commission, in affirming the award, agreed with the deputy commissioner.

The commission's application of the Alvis death presumption was in error. The presumption applies to those instances where an employee "is found dead . . . at his place of work" and the circumstances of death are unexplained. The presumption does not apply to a case such as the one at bar, where Keil was not found dead at his place of work, but rather suffered injuries in an unexplained accident that later proved to be fatal.

To hold that the presumption applies in this case would require a wide broadening of the presumption well beyond that of any precedent from this Court or the Supreme Court of Virginia. See Pinkerton's, Inc. v. Helmes, 242 Va. 378, 380-81, 410 S.E.2d 646, 648 (1991). As the Supreme Court held in Helmes, such a change in the parameters of the Alvis presumption is a policy decision to be made, if at all, by the General Assembly.

> Broadening the use of the presumption to
> such an extent significantly alters the
> jurisprudence of workers' compensation law.
> This change, we believe, is more properly a

-

matter of policy, a prerogative of the
legislative branch of government.

Id. at 381, 410 S.E.2d at 648.

In the forty-four years since the Alvis decision, the
General Assembly has not chosen to expand the presumption beyond
its original parameters.  Accordingly, we find the commission's
application of the presumption was error.

### B.   PREPONDERANCE OF THE EVIDENCE

Our holding, however, does not require the commission's
award to be reversed because the commission, while incorrectly
applying the Alvis death presumption, correctly found claimant
established that Keil's fatal injuries arose out of his
employment without reliance on the presumption:

> Our finding that the death presumption
> applied is not necessary to our finding in
> this case, however, because the evidence as
> a whole preponderates that [Keil] died as a
> result of a fall of approximately fifteen
> feet onto concrete as he was attempting to
> descend from the roof where he was working.

The evidence supports the commission's finding that the
fatal injuries suffered by Keil arose out of his employment.[3]
While no one witnessed the fatal incident, claimant presented
the death certificate, which provides that Keil's death was due
to closed head and chest injuries.  Dr. Hoffman, the medical
examiner, testified, to a reasonable degree of medical

---

[3] Employer does not contest that Keil was "in the course of
his employment" when he left the workstation to descend from the
roof.

-

certainty, that Keil died as a result of closed head and chest injuries sustained in the fall.  Dr. Waters also offered his opinion, "I believe he died from the fall."  In addition, there is non-expert circumstantial evidence supporting the commission's finding, including the fact that people heard the ladder being displaced, the fact that loose gravel from the roof was found on the ground next to Keil, the fact that Keil was feeling well prior to the accident and he did not complain prior to or after the accident of chest pain.  There is no evidence that Keil suffered a myocardial infarction.

The claimant, therefore, presented evidence which, directly or by inference, established that the fatal injuries arose out of Keil's employment as a roofer.  "'[A]n accident arises out of the employment when it is apparent to a rational mind, under all attending circumstances, that a causal connection exists between the conditions under which the work is required to be performed and the resulting injury.'"  Smithfield Packing Co., Inc. v. Carlton, 29 Va. App. 176, 181, 510 S.E.2d 740, 742 (1999) (citation omitted)).

The commission determined this evidence to be credible. "Issues of weight and credibility are uniquely within the province of the commission, and we will not substitute our judgment for that of the trier of fact."  Goodyear Tire & Rubber

-

<u>Co. v. Harris</u>, 35 Va. App. 162, 171, 543 S.E.2d 619, 623 (2001) (citations omitted).

Additionally, there is no credible evidence in the record to contradict this determination. Employer did not present evidence to rebut claimant's credible evidence. It simply presented Dr. Waters' opinion that Keil did not die as a result of his head injuries. Dr. Waters was unable to determine a cause of death and did not opine as to the possibility that Keil died as a result of the closed head <u>and</u> chest injuries as determined by the medical examiner. It presented Dr. Hagberg's medical opinion that he was unable to determine the cause of death, but in which he proffered a guess that Keil "most likely" died as the result of a myocardial infarction unrelated to his fall. Yet, Dr. Hagberg admitted this theory was speculative and not made with a reasonable degree of medical certainty.

We hold, therefore, that the commission's finding that claimant established that her husband was fatally injured as a result of a fall which arose out of his employment as a roofer is supported by credible evidence in the record and reasonable inferences drawn from that evidence. The commission's decision is affirmed.

<u>Affirmed.</u>

-