COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Elder and Haley
Argued at Salem, Virginia


ESTATE OF RALPH HELTON

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 1967-04-3                       JUDGE JAMES W. BENTON, JR.
                                                           APRIL 5, 2005
ELK GARDEN CATTLE COMPANY AND
 VIRGINIA FARM BUREAU FIRE AND
 CASUALTY INSURANCE COMPANY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Ginger J. Largen (J.D. Morefield; Morefield & Largen, P.L.C., on
        brief), for appellant.

        Ramesh Murthy (Penn, Stuart & Eskridge, on brief), for appellees.


        The Estate of Ralph Helton contends the Workers' Compensation Commission erred in

ruling that the evidence failed to prove Ralph Helton's injuries arose out of his employment.  For

the reasons that follow, we affirm the commission's ruling.

                                            I.

        Ralph Helton was injured January 2, 2002 during the course of his employment with Elk

Garden Cattle Company.  At the evidentiary hearing, no persons testified they witnessed the

actual event that caused Helton's injuries.  Although two of Helton's co-workers testified

concerning the events occurring prior to Helton's injuries, they gave a conflicting version of a

significant event.

        Danny Duty testified that he and Helton normally built and repaired fences on the

property where Elk Garden kept its cattle.  On January 2, 2002, however, they engaged in work

─────────────────────
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

involving herding cattle. Duty testified that Ronnie Lester, a co-worker, told Duty and Helton to join him in separating calves from cows, a job they both had done before. Duty estimated that, over the course of a year, he and Helton had joined in the herding of cattle twenty to thirty times.

On this morning, the men mounted three four-wheel all-terrain vehicles and separately drove in different directions over 80 acres to locate cows and their calves and to herd them to a holding pen. After two or three hours, Lester came to Duty and told him that Helton had been hurt. Duty and Lester then drove to the holding pen where Duty saw Helton laying inside one of the two connected pens. Although Duty had seen cattle in that pen an hour earlier, no cattle were there when Duty and Lester entered the pen to aid Helton. Duty testified that the gate to the pen was open, that the gate should have been closed, and that cattle were in the other pen.

Duty testified that Helton's vehicle was "parked, brake on, motor off." Helton was on the ground approximately seven feet away from the vehicle. Nothing else was around Helton. Duty sat with Helton, held his head, and spoke with him until medical assistance arrived. Duty testified that Helton was conscious, responded "just a little bit," but did not say anything. He said Helton "was hurt bad" with an injury to the left side of his forehead. Duty did not know what caused Helton's injury.

Lester testified that Helton and Duty told him that one of the owners said they should begin "taking cows and calves from the well bottom and putting them in the holding pen." Similar to Duty, Lester testified the men drove off in different directions and worked individually to find the cows and their calves. Lester described the area in which they worked to be about three hundred acres, and he said no one was in charge that day when they went to herd the cattle.

Lester testified he saw Helton later in the morning herding a cow and a calf toward the pen. He noticed the cow and calf were causing Helton some trouble. Shortly after seeing this,

he lost sight of Helton but later saw a cow coming up the hill toward him. Although the cow was without a calf, he believed it was the same cow Helton was herding, and he unsuccessfully tried to turn the cow back toward the pen. While doing this he felt that "something wasn't right" and went to the pen. There, he found Helton lying on his stomach inside the pen in an area that was "mostly dirt." He saw no rocks or other items around Helton and noticed that the calf was in the other pen.

Lester testified that Helton's vehicle was four to five feet behind and to the side of Helton. Contrary to Duty, Lester testified the vehicle's "ignition switch was turned on" but the engine was not running. He also testified the vehicle's brake was not set. Lester testified the vehicle was in a pile of rocks, as if it had drifted backward down a slope.

Lester turned Helton onto his back, saw blood coming from Helton's nose, and also noticed a spot on Helton's forehead. Helton's breathing was "gurgled," and Helton was not conscious. After Lester tried to talk to Helton and shook him, Lester went to find Duty. When they returned to the pen together, Lester again shook Helton but perceived no response. Both men stayed with Helton until assistance arrived.

The deputy commissioner found that Helton sustained an injury by accident on January 2, 2002 and died from these injuries on March 12, 2002. He noted the parties had stipulated that the presumption applicable in death cases, see Southern Motor Lines v. Alvis, 200 Va. 168, 104 S.E.2d 735 (1958), did not apply to the circumstances of this case. The deputy commissioner also found that Helton's injury occurred in the course of his employment. Although the deputy commissioner found that the injury occurred when Helton "came into contact with some significant force," he also found that no medical opinion reported that Helton's injuries were caused by an identifiable entity. He further found that Duty and Lester gave conflicting testimony about the location and operating status of Helton's vehicle and that no testimony or

other evidence allowed a conclusion about the cause of Helton's injury. The deputy commissioner concluded that the accident was unexplained and that the evidence failed to prove the injury arose out of Helton's employment.

Affirming those findings, the commission also noted the conflict between Duty's and Lester's testimony. Although the commission found that "something unusual might have occurred when [Helton] attempted to place a cow and calf in the holding pen," the commission ruled that the evidence was not sufficient to draw a conclusion as to what caused Helton's injuries. The commission further ruled that the evidence engendered only "conjecture or speculation" about what occurred. One commissioner dissented, noting that the only reasonable conclusion to draw from the circumstances was that Helton's injuries were caused by a task of his employment and were compensable.

II.

The three questions presented on appeal raise the issue whether the commission erred in ruling that the evidence failed to prove Helton's "injuries arose out of his employment."

Under the Workers' Compensation Act, "'[i]njury' means only injury by accident arising out of and in the course of the employment." Code § 65.2-101. Thus, a person who seeks to claim benefits under the Act "must prove by a preponderance of the evidence that an injury arose out of the employment." K&G Abatement Co. v. Keil, 38 Va. App. 744, 755, 568 S.E.2d 416, 422 (2002). "To satisfy the 'arising out of' prong of the compensability test, [the evidence must] prove that 'there is apparant to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.'" Marketing Profiles, Inc. v. Hill, 17 Va. App. 431, 434, 437 S.E.2d 727, 729 (1993) (citation omitted). In other words, these standards "require a claimant to show that the conditions of the workplace or that some significant work related exertion caused the injury."

Plumb Rite Plumbing Serv. v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989). In Virginia, "simply being injured at work is [not] sufficient to establish compensability." County of Chesterfield v. Johnson, 237 Va. 180, 185, 376 S.E.2d 73, 76 (1989).

The principle is well established that the commission's determination regarding causation is a finding of fact. Marcus v. Arlington County Bd. of Supervisors, 15 Va. App. 544, 551, 425 S.E.2d 525, 530 (1993). The Supreme Court and we "repeatedly have noted that the commission's finding of fact, when based on credible evidence, are conclusive and binding upon us." Ivey v. Puckett Construction Co., 230 Va. 486, 488, 338 S.E.2d 640, 641 (1986); Basement Water Proofing v. Beland, 43 Va. App. 352, 358, 597 S.E.2d 286, 289 (2004). It is equally well established that we must base our determination upon a review of "the evidence in the light most favorable to [the party] who prevailed before the commission." Westmoreland Coal Co. v. Russell, 31 Va. App. 16, 20, 520 S.E.2d 839, 841 (1999).

The evidence established Helton was found inside the pen with serious injuries. As the commission noted, the testimony of Duty and Lester conflicted concerning the operational condition in which Helton's vehicle was discovered. In view of Duty's testimony that the vehicle was "parked" with its brakes engaged and with the ignition turned off, the evidence failed to establish that the vehicle had any connection to Helton's injury. Likewise, the evidence failed to prove the cattle caused Helton's injuries. That the cattle could have caused the injury is not a sufficient basis to prove by a preponderance of evidence that the cattle did cause the injury. The proof left to conjecture the role, if any, the cattle played in Helton's injury.

In addition, the medical evidence provided no basis upon which an inference could be drawn concerning causation. No person saw the accident, and, therefore, no person could have given a report upon which the physician could have formed a basis for a determination of

- 5 -

causation. Indeed, the emergency room report merely notes in conclusory fashion that this was "an apparent [all-terrain vehicle] accident."

The commission found that "the evidence is not sufficient for [it] to draw a conclusion as to what caused the accident resulting in [Helton's] serious injury." As the commission noted, no evidence established Helton was injured by cattle, or by some event occurring as a result of putting cattle in the pen, or by some event connected with his use of the four-wheel vehicle. Indeed, the evidence is deficient because it failed to prove Helton's injuries were caused by any event related to his employment.

We agree with the commission's finding that the facts of this case are distinguishable from the facts in Keil, where medical evidence proved that the employee's fall from a height of fifteen feet caused the injuries that led to his death. 38 Va. App. at 758, 568 S.E.2d at 423. Moreover, and unlike this case, circumstantial evidence in Keil both supported this finding and ruled out other possible causes. Id. Addressing Keil, the commission made the following findings:

> In Keil, a roofer descended a ladder in order to come down off the roof of a school building and make a phone call. He was found lying on the pavement, there was loose gravel, and the ladder was displaced. Although no one witnessed a fall, individuals in the school infirmary heard the ladder move and the employee strike the pavement. Moreover, two physicians opined that he died as a result of the fall.
>
> . . . Unlike Keil, where the facts established that the ladder, the likely causative instrument, was displaced, the testimony of Lester and Duty conflicts with regard to whether the [all-terrain vehicle] was found in an unusual position, and whether the parking brake was engaged. Also unlike Keil, no one heard anything indicative of an accident involving the [vehicle], and the most that the medical records establish is that there was an "apparent [all-terrain vehicle] accident" based on the proximity of the decedent to the vehicle. Other medical records indicate that the mechanism of injury is unknown.

The record supports the commission's observation that the evidence in this case engenders only "conjecture and speculation."  Accordingly, we affirm the commission's ruling.

<u>Affirmed.</u>