COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, Huff and Senior Judge Annunziata
Argued at Lexington, Virginia

GP BIG ISLAND, LLC AND INSURANCE
 INDEMNITY COMPANY OF NORTH AMERICA

MEMORANDUM OPINION* BY

v.      Record No. 0273-14-3        JUDGE WILLIAM G. PETTY
                                    NOVEMBER 18, 2014

BRANDON D. CREASEY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

S. Vernon Priddy III (Michael L. Goff, Jr.; Two Rivers Law Group,
P.C., on brief), for appellants.

James B. Feinman (Andrew D. Finnicum; James B. Feinman &
Associates, on brief), for appellee.


GP Big Island, LLC appeals an order of the Workers' Compensation Commission.  GP

Big Island assigns four errors in this appeal.  All four alleged errors, however, can be condensed

into one:  the commission erred in finding that Creasey's injury arose out of his employment.

For the reasons set forth below, we affirm the commission.

I.

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite below only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal.  On appeal, "[w]e view the evidence in the light most favorable to the prevailing

party below, and '[t]he fact that contrary evidence may be found in the record is of no

consequence if credible evidence supports the commission's finding.'"  Virginia Polytechnic

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Institute v. Posada, 47 Va. App. 150, 158, 622 S.E.2d 762, 766 (2005) (second alteration in original) (quoting Creedle Sales Co. v. Edmonds, 24 Va. App. 24, 26, 480 S.E.2d 123, 124 (1997)).

So viewed, the evidence presented at the hearing before Deputy Commissioner Hunter established that on March 19, 2012 and June 11, 2012 Creasey filed a claim for benefits, seeking: lifetime medical benefits; temporary total disability benefits from February 24, 2012 to May 8, 2012 and beginning June 2, 2012 and continuing; and permanent partial disability. Creasey alleged that he injured his right knee, back, and right hip by accident on February 24, 2012 while on the job working for GP Big Island.

At a hearing before the deputy commissioner on April 11, 2013, Creasey testified that, while working at the GP Big Island paper mill, he stepped up onto the platform of a winder machine, as he does approximately forty to seventy times a day, to "tear off a sheet of paper, put a piece of tape on it, and then get back off of the platform." He said that his injury occurred as he was stepping down. In describing the accident, Creasey stated, "I had slipped with my left foot, and my right foot was still elevated in an awkward position at fifteen and three-eighth inch step platform." When asked about the floor surface, Creasey said, "This is a concrete surface, and it has a lot of paper dust and a lot of rubber stuff that comes out of the shipping department that blows in, in there and accumulates at the edges of the mats." He said that dust "makes a slippery surface" and that he "overshot" a rubber mat, slipping on the concrete surface. According to Creasey, when he put his left foot down, he instantly felt pain and felt something "pop." He said that he had nothing in his hands and was wearing steel-toed boots. Creasey testified that following the accident, the matter was reported to the working supervisor for the evening, Ray Campbell. Creasey went to the Lynchburg General Hospital Emergency Room following the accident.

Campbell testified that he went to the scene of the accident less than two minutes after it occurred. He said that the area was free of debris. He stated that although the area accumulates a lot of dust, it is cleaned several times daily, sometimes more. Campbell added that there is a handrail in the area where Creasey would have stepped and estimated that the step was between twelve and fourteen inches high. Both Campbell and Creasey agreed that the elevation of the winder platform was higher than the rise of a normal step.

In an opinion dated May 2, 2013, Deputy Commissioner Hunter held that the accident arose out of Creasey's employment. She also held that Creasey failed to market his residual capacity from February 24, 2012 to May 8, 2012 and from May 31, 2012 to August 15, 2012; therefore, his claim for temporary total disability benefits for those times was denied. Creasey was awarded temporary total disability benefits for the time from August 16, 2012 to October 29, 2012. Furthermore, his claim for permanent partial disability benefits was denied and dismissed.[1] Both Creasey and GP Big Island requested review of the deputy commissioner's decision to the full commission. On January 15, 2014, the full commission affirmed every aspect of the deputy commissioner's decision.

II.

GP Big Island alleges that the commission erred in finding that Creasey's injury arose out of his employment. We affirm the full commission.

"[W]e review questions of fact under the highest level of appellate deference." Thorpe v. Clary, 57 Va. App. 617, 623, 704 S.E.2d 611, 614 (2011). As required by Code § 65.2-706(A), we treat the commission's findings of fact as "conclusive and binding" so long as they rest on a

---

[1] We note here that Creasey filed a separate appeal to this Court challenging the commission's denial of his claim for permanent partial disability benefits as well as its holding that he failed to market his residual work capacity. In a memorandum opinion decided this day, November 18, 2014, we affirmed the holding of the commission. See Creasey v. GP Big Island, LLC, No. 0264-14-3 (Va. Ct. App. Nov. 18, 2014).

sufficient threshold of evidence. "This appellate deference is not a mere legal custom, subject to a flexible application, but a statutory command," Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 749-50, 601 S.E.2d 693, 697 (2004) (citation omitted), that binds us so long as a "'rational mind upon consideration of all the circumstances'" could come to the conclusion the commission adopted, K&G Abatement Co. v. Keil, 38 Va. App. 744, 756, 568 S.E.2d 416, 422 (2002) (quoting Baggett Transp. Co. v. Dillon, 219 Va. 633, 637, 248 S.E.2d 819, 822 (1978)).

For an injury to be compensable, it must be "by accident arising out of and in the course of employment." Code § 65.2-101. As the Supreme Court noted in Combs v. Virginia Power, 259 Va. 503, 510, 525 S.E.2d 278, 282 (2000) (citation omitted),

> In Virginia, we apply an "actual risk test," meaning that the employment must expose the employee to the particular danger causing the injury, notwithstanding the public's exposure generally to similar risks. Thus, if there is a causal connection between [Creasey's] injury and the conditions of [his] employment, then [his] injury arose out of [his] employment.

See United Parcel Serv. of Am. v. Fetterman, 230 Va. 257, 258, 336 S.E.2d 892, 893 (1985) ("An accident arises out of the employment when there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed.").

> [A]n injury sustained as a result of a fall on stairs, for example, "does not arise out of the employment without evidence [that] a defect in the stairs or . . . a condition of the employment caused the fall." However, the condition of the stairs that caused the injury need not have been overtly dangerous (i.e., unduly slippery, in disrepair, poorly lit, or structurally deficient) to constitute a "defect." It is enough that the stairs were of such a nature that they required an increased degree of attentiveness to negotiate them. For instance, "an injury sustained as a result of a step of abnormal height or condition is compensable." Indeed, even a step that is "just a little bit higher than usual" can constitute a risk of employment.

Nurses 4 You, Inc. v. Ferris, 49 Va. App. 332, 341, 641 S.E.2d 129, 133 (2007) (citations omitted).

- 4 -

Here, the deputy commissioner found, in light of the circumstances under which Creasey was working, that his injury arose out of his employment:

> In the present matter, we find that the unusual height of the platform from which the claimant was stepping off was a risk peculiar to his employment and contributed to his injury. . . . Although the claimant measured the platform at 15 3/8 inches while his supervisor, Ray Campbell, thought that the step was probably twelve to fourteen inches, both testified that elevation of the winder platform was higher than the rise of a normal step. . . . According to the claimant, photographs on the Safety Flash the employer issued to its employees as a result of the claimant's February 24, 2012 injury show how his right leg was elevated and bent as he descended. The claimant testified that the step caused his leg to be elevated and bent back. . . .
> Because the evidence here shows that the claimant was stepping down from the abnormal height of the winder with his left foot when he felt a pop and pain in his right knee as his right leg remained on the platform, causing that leg to be elevated and bent, we find that the claimant sustained an injury by accident to his right knee arising out of his employment.

The full commission affirmed this rationale, specifically noting that the unusual height of the step caused Creasey to step down off the platform in an awkward manner and injure his knee. Because a rational mind could come to this conclusion, we affirm the full commission's decision.

Nevertheless, employer argues that our unpublished decision in Smith v. Rockingham & Virginia Association of Counties Group Self-Insurance, No. 0991-10-4, 2011 Va. App. LEXIS 58 (Va. Ct. App. Feb. 22, 2011), supports reversal. We disagree. Not only do unpublished opinions have no precedential value, but the facts of Smith make it easily distinguishable.

In Smith, a firefighter's foot slipped while he was climbing into a fire engine, causing his right knee to twist, injuring him. Id. at *1-2. The step was twenty-three inches above the ground, and he used a bar to pull himself up. Id. at *1. Smith alleged that the height of the step caused him to be in an "awkward position," causing him to slip and twist his knee. Id. at *2. The commission held that Smith failed to prove that his injury arose out of his employment because there was no causal connection between the height of and condition of the step and

Smith's knee injury.  Id. at *7.  This Court affirmed that decision in light of this Court's

deference to the commission's factual findings.  Id. at *7-8.  As we emphasized in Smith, and

noted above here, "'Issues of weight and credibility are uniquely within the province of the

commission, and we will not substitute our judgment for that of the trier of fact.'"  K & G

Abatement Co., 38 Va. App. at 759, 568 S.E.2d at 423 (quoting Goodyear Tire & Rubber Co. v.

Harris, 35 Va. App. 162, 171, 543 S.E.2d 619, 623 (2001) (citations omitted)).

Furthermore, the employee in Smith stated that he was speculating that the height of the

step contributed to his injury.  Here, Creasey said that if the step had not been as high, his leg

would not have been as elevated—it caused his leg to be elevated and bent backwards when he

descended the platform.  The commission, as the fact finder, found this testimony credible and

found that the injury arose from his employment in light of the connection between the height of

the step and Creasey's injury.  Because that finding is supported by a sufficient threshold of

evidence, it is conclusive and binding on us here.

III.

For the foregoing reasons, we affirm the decision of the full commission.

Affirmed.